**STEERE TANK LINES, INC., Petitioner,**

v.

**INTERSTATE COMMERCE COMMIS-SION and United States of America, Respondents.**

No. 81-4169
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Jan. 25, 1982.

Hugh T. Matthews, Dallas, Tex., for petitioner.

Alan J. Thiemann, Washington, D. C., for intervenors American Trucking Ass'ns, Inc., et al.

Keith G. O'Brien, Washington, D. C., for International Brotherhood of Teamsters, etc. and Motor Carrier Lawyers' Association.

Laurence H. Schecker, Gen. Counsel, ICC, Robert J. Wiggers, Robert B. Nicholson, Dept. of Justice, Antitrust Div., Washington, D. C., for respondents.

James R. Stiverson, Columbus, Ohio, for intervenor Maxwell Co.

Before CLARK, Chief Judge, RANDALL and WILLIAMS, Circuit Judges.

PER CURIAM:

█ Steere challenges the Interstate Commerce Commission's grant of an application by the Maxwell Company to remove a restriction on Maxwell's authorization to transport goods. Under Maxwell's previous authorization, it could transport "spent silica gel catalyst, in bulk." The new authorization empowers Maxwell to transport "commodities in bulk," without further restriction. The genesis of the ICC's decision is its "Guidelines" for removal of restrictions on commodities that a carrier may transport. 49 C.F.R. § 1137.21(b). In Steere's view, these guidelines contravene the ICC's authority under the Motor Carrier Act of 1980, and, therefore, the broadened certificate granted to Maxwell is invalid. Under our decision in *American Trucking Associations, Inc. v. ICC*, 659 F.2d 452 (5th Cir. 1981), Steere's petition must be granted.

The Motor Carrier Act of 1980 authorizes the ICC to lift unreasonable restrictions from the certificates that authorize motor carriers to transport goods. 49 U.S.C.A. § 10922(h)(1). To implement this statutory aim, the Commission issued guidelines for processing restriction-removal applications. The guidelines inform an applicant who is authorized only to haul "one or more named commodities" that the ICC will routinely grant an application for broader authorization framed in terms of the Commission's

generally accepted categories, such as "commodities in bulk." 49 C.F.R. § 1137.21(b).[1]

The Commission's guidelines ineluctably compel an applicant to use the categories suggested by the Commission. *American Trucking Associations*, 659 F.2d at 463.[2] Maxwell's application did track the Commission's language, requesting the removal of the restriction to "spent silica gel catalysts, in bulk" and the substitution of an authorization to transport "commodities in bulk." Pursuant to its rule, the Commission granted the restriction-removal application.

In *American Trucking Associations*, this Court reviewed portions of the ICC's guidelines implementing the Motor Carrier Act's command "to reasonably broaden the categories of property authorized." 49 U.S.C.A. § 10922(h)(1). We interpreted the Commission's guidelines to force an applicant for the removal of restrictions to adopt the broad categories suggested by the Commission. 659 F.2d at 463–64. We held that these categories failed to account for the Motor Carrier Act's mandate that every carrier be "fit, willing, and able to provide the transportation to be authorized by the certificate." 49 U.S.C.A. § 10922(a)(1); 659 F.2d at 464. We noted that the Commission's formulas for removing restrictions on certificates make "it likely that a carrier with authority to transport only one commodity who desires to transport only one additional commodity would be required to seek authority for an entire class of commodities, some of which the carrier may not wish to transport or may lack the ability to

transport." 659 F.2d at 462. These observations led us to conclude that the guidelines were infirm because they fail to provide for "reasonable broadening" of the category of products each carrier is authorized to haul. Therefore, we held that:

> The carrier must be permitted, both by the Commission's express statement and actual agency practice, to seek some other commodity classification if it can show that use of the tripartite commission standard would require the transportation of commodities unrelated to those previously authorized or would require the institution of a different type of service, and that the carrier is not fit or is unwilling or is unable to provide the service. The procedure for seeking such a modification must be reasonably flexible so that applications will neither be arbitrarily prejudged nor condemned to excessive expense. Finally, there must be some opportunity for opposition to an application to be voiced.

Silica gel is a catalyst used in processing petroleum. Because the catalyst is exhausted through use, it must be periodically replaced. Maxwell hauls this "spent silica gel in bulk." Its former certificate limited it to hauling this one item. As such, the certificate was an example of the overly-restrictive certificates that Congress condemned in the Motor Carrier Act.

■ But the new category that the Commission has awarded Maxwell includes all products hauled in bulk.[3] Maxwell is now authorized to carry all petroleum products,

---

1. § 1137.21 provides in relevant part:
   (b) *Where a carrier is authorized to transport one or more named commodities, the authority is considered unduly restrictive* and may normally be broadened under these procedures.
   Use of these procedures is normally appropriate for applications which seek—
   (1) to expend [sic] such a commodity authorization to the two-digit STCC level;
   (2) to replace such an authorization with a commodity description contained in *Descriptions in Motor Carrier Certificates,* 61 M.C.C. 209 (1952) and 766 (1953); or,
   (3) *to replace such an authorization with a broader class description generally accepted by the Commission, such as commodities in*

bulk, commodities which because of their size or weight require special equipment, or oilfield commodities as described in *Mercer Extension-Oilfield Commodities,* 74 M.C.C. 459 (1946).
(emphasis supplied).

2. Because of their coercive effect, *American Trucking Associations* held that these guidelines actually are rules which warrant more stringent judicial review. 659 F.2d at 464 and n. 50.

3. According to the respondent ICC:
   Bulk service is the transportation of fungible commodities which can be poured, scooped, or shoveled, and which generally

all non-petroleum chemicals, all ores and minerals, tequila, Coca-Cola syrup, milk, liquid feed, dry fertilizer, flour, sugar, and a virtually unlimited list of other bulk goods. It is likely that Maxwell is fully competent to haul some of these goods but is either unversed or uninterested in hauling many others. The record contains no evidence to support a conclusion that the carrier is "fit, willing, and able to provide the transportation authorized by the certificate." 49 U.S. C.A. § 10922(a)(1)(A). We believe that an applicant for removal of a restriction should be required to make a prima facie showing in its application that it is fit, willing and able to provide the transportation for which it is seeking authorization. We do not suggest that such a showing must be elaborate. What form that showing should take and how detailed it should be are, in the first instance, matters that should be addressed by the Interstate Commerce Commission.

We remand to the Interstate Commerce Commission for reconsideration in the light of our decision in *American Trucking Associations v. I. C. C.*, 659 F.2d 452 (5th Cir. 1981). Costs are to be divided equally.

REMANDED.

are of such size that they cannot be handled piece by piece. The term "in bulk" commonly refers to a loose mass which is poured or thrown into a vessel or vehicle without regard to order, and which is restrained during transportation only by the side of the carrying vessel.

Brief for Respondent at 18 n.12 (citations omitted).